IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
CAROLYN L. ANDERSON,              :
o/b/o A. LANKFORD,                :
                                  :
     Plaintiff,                   :
                                  :
vs.                               :     CIVIL ACTION 11-0720-M
                                  :
MICHAEL J. ASTRUE,                :
Commission of Social Security,    :
                                  :
     Defendant.                   :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff[1] seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18). Oral argument was waived in this action (Doc. 19). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner

---

[1] Although this action was actually brought by her grandmother, the Court will refer to Lankford as the Plaintiff.

1

be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Lankford was ten years old and had completed a second-grade education (Tr. 46). In claiming benefits, Plaintiff alleges disability due to ADHD, asthma, and Oppositional Defiant Disorder (Doc. 11 Fact Sheet).

The Plaintiff filed a protective application for SSI on April 30, 2009 (Tr. 168-70; *see also* Tr. 9). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although she had severe impairments, Lankford was not disabled (Tr. 9-29). Plaintiff requested review of the hearing decision (Tr. 5) by the Appeals Council,

2

but it was denied (Tr. 1-3).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Anderson alleges the single claim that the ALJ failed to properly analyze her individualized education program (hereinafter *IEP*) (Doc. 11). Defendant has responded to—and denies—this claim (Doc. 14).

Lankford asserts that the ALJ failed to properly analyze her IEP. More specifically, she asserts that this report is important because it post-dates the information relied on by the ALJ; it is further asserted that the IEP is "vital in determining the degree of limitation in the domains of Interacting and Relating with Others and also Health and Physical Well Being" (Doc. 11, pp. 5-6). Lankford has argued that the ALJ's failure to properly consider this evidence has resulted in his failure to meet his obligation to develop a full and fair record (Doc. 11, pp. 3-4).

The Court notes that the Eleventh Circuit Court of Appeals requires that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The Court further notes, however, that Plaintiff admits

3

that "[a]n Administrative Law Judge is not required to discuss every piece of evidence on the record, *McCray v. Massanari*, 175 F.Supp.2d 1329, 1336 (M.D. Ala. 2001) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998))" (Doc. 11, p. 3).

The IEP completed on February 25, 2011[2] begins by saying that Lankford, a second grade student, is "a very bright, talkative young lady who is very creative.  She has an excellent vocabulary and seems older than her years.  She scores well in all academic areas and is able to master standards without assistance" (Tr. 222).  However, the IEP goes on to say that she

> is experiencing extreme behavioral issues at school which include, but are not limited to:  leaving school without permission, theft of porpoerty, [sic] physical aggression towards peers and staff, inappropriate 'sexual language' and willful disobedience.  Accommodations include, behavioral interventions, special education crises support, teacher/principal reward system, cool down time in resource room, resource room support, student/teacher conferences, parent conferences, serlf [sic] contained classroom intervention, adjusted school day, school based counseling, referral to resource officer, and referral to a therapudic [sic] day program.

---

[2]The Court notes that there are two IEP's in this record.  The first was completed in March 2010 (Tr. 213-21) while the second was concluded on February 25, 2011 (Tr. 222-29).  As Plaintiff has quoted the more recent IEP exclusively, the Court will focus its attention on that evidence.

4

(Tr. 222).  Because of her behavioral problems, Plaintiff was placed in a homebound program for three hours per week; Lankford was to be re-evaluated every forty-five days for alternative, appropriate placement (Tr. 228-29).  There was testimony at the evidentiary hearing that Plaintiff had been removed from her school to a day treatment school because of her behavior (Tr. 43).

In his decision, the ALJ stated that he carefully considered the entire record (Tr. 12).  The ALJ also noted that Plaintiff "underwent an IEP testing due to her behavior for special classes.  The claimant was found eligible for special education and related services due to her behavior" (Tr. 15). In the "Acquiring and Using Information" domain, the ALJ noted that "school records from Morningside Elementary School documented that the claimant earned A's and B's" in the 2011 IEP; the ALJ found that Plaintiff had no limitations in this domain (Tr. 22).  In the "Interacting and Relating with Others" domain, the ALJ pointed out that "Morningside School record [sic] document disciplinary problems for which the claimant was written up and suspended from school as noted in [both IEP's];" the ALJ found that Lankford had less than marked limitation in this domain (Tr. 24).  In the "Health and Physical Well-Being"

domain, the ALJ made no specific reference to Plaintiff's IEP but found that she had less than marked limitation (Tr. 27-28).

The Court notes that the ALJ had nearly three hundred pages of medical evidence (Tr. 230-525), plus Plaintiff's Grandmother's testimony at the evidentiary hearing, which he summarized and considered in reaching his decision (Tr. 13-21). Though all of the evidence will not be summarized herein, the Court will review the most salient parts.

On October 20, 2006, the Mobile County Department of Psychological Services administered the Stanford-Binet Intelligence Scale to Lankford who scored a Nonverbal IQ of 114, a Verbal IQ of 112, and a Full Scale IQ of 114 (Tr. 232; *see generally* Tr. 230-45). Plaintiff also took the Behavior Assessment System for Children that measures behavior and personality; on that test, Lankford's scores were clinically significant for the following: hyperactivity ("[t]he tendency to be overly active, rush through work or activities, and act without thinking"); aggression ("[t]he tendency to act in a hostile manner (either verbal or physical) that is threatening to others"); and externalizing problems (Tr. 233-34). There were also reports from school officials of Plaintiff's being defiant to authority, hitting other students, throwing chairs,

6

and running away from school (Tr. 236).

On February 18, 2009, Lankford was admitted to Altapointe Health systems for approximately four weeks; it was noted that her problems included severe defiance, anger outbursts, and sadness (Tr. 257-79). Her behaviors were suggestive of oppositional defiant disorder and ADHD, combined type, for which she was given medication, including Abilify.[3] It was noted that, during her hospital stay, Plaintiff had very low frustration tolerance and that she had to be physically restrained frequently and given medication to prevent injuring herself; she also demonstrated sexually inappropriate behavior. Lankford's behavior improved before discharge. A follow-up note from April 2009 stated that Plaintiff had hit a teacher and destroyed a classroom and that she continued to lie and steal (Tr. 287). On May 13, 2009, it was reported that Lankford had hit and scratched her teacher the day before and then run into the hall, taking other students' ice cream; she was suspended from school for five days for this behavior (Tr. 285). On the last day of school, Plaintiff hit her teacher and called her a bitch (Tr. 283). At a meeting on August 10, 2009, Lankford stated that she

---

[3]*Abilify* is a psychotropic drug used in the treatment of schizophrenia. **Error! Main Document Only.** *Physician's Desk Reference* 872-74 (62nd ed. 2008).

7

had been having sex with her peers since she was five, six, or seven years old (Tr. 309).

On August 31, 2009, Psychologist Thomas S. Bennett examined Lankford and found her alert and oriented in all spheres; she had good immediate recall and no obvious difficulty with short- or long-term memory (Tr. 322-26).  Abstract reasoning skills were good; social judgment was adequate.  In his final comments, Bennett made the following observations:

> Her ability to function in an age appropriate manner cognitively appears to be average or above average.  Her ability to function communicatively appears to be average or above average.  **Her ability to function socially appears to be quite good if she is motivated.**  Her ability to function adaptively appears to be average or above average.  She has reportedly had significant behavior problems, but the actual cause is unknown.  Her concentration, persistence, and pace appear to be quite good in the current evaluation, though they were not extensively evaluated.

(Tr. 325) (emphasis added).

Records from Altapointe Health Systems show that Lankford was kicked out of private school in December 2009 for fighting her peers and biting her teacher and calling her a bitch (Tr. 395, 399).  She was then suspended from public school; her principal told her that she could not return unless her

8

medications were increased (Tr. 397). On December 30, 2009, Plaintiff's Grandmother stated that Lankford had become increasingly defiant, acting out and refusing to follow rules (Tr. 395). In a note from March 15, 2010, it was noted that Plaintiff was attending public school, but leaving at noon every day because of her behavior; it was further noted that she had been suspended twice during the third quarter for fighting and had been called to the office several times for stealing (Tr. 389). On July 21, Lankford's Grandmother reported that Plaintiff still lied to her and was acting out sexually (Tr. 499). A later note reported that during the first couple of weeks of the new school year, she had had a fight with another girl, had slapped a boy, kissed a boy, and pulled up her skirt in class; for these behaviors, Lankford was attending school for only half a day and sitting in the principal's office during P.E. (Tr. 496).

After reviewing some of the relevant portions of the transcript, the Court finds no merit in Plaintiff's claim that the ALJ failed to properly analyze her IEP. The record is replete with evidence of her behavioral problems. The Court further finds that the record demonstrates that the ALJ considered the IEP and used it as the basis for his conclusions.

Lankford has raised a single claim in this action; the Court has found that that claim is without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 13th day of September, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE